Morning. The first case of the three that we have is United States v. Rosario, number 10-2598, Messrs. Fine and Zosmer. Good morning, and may it please the Court, my name is David Fine. I represent the appellant, Jesus Rosario. Judge Ambrose, could I reserve four minutes for rebuttal? That's fine, sir. Thank you. The parties come before the Court today with agreement on several points, one of which is that the district judge made at least two errors in this case. The first is that during the plea colloquy with Mr. Rosario, the district judge told him the wrong maximum sentence by a significant amount, 50% of the total statutory maximum. Did you know why he did that, Mr. Fine? Your Honor, I'm having a little difficulty hearing you. Hang on, Judge Goss. We're going to turn up the volume just a touch here. I'm sorry about that, Your Honor. That's perfectly all right. Perfect. Can you hear me now? Yes, Your Honor, I can. Both the district court judge and the attorney for the government both explained, did they not, that they were reading from a statute which provided for a 30-year sentence if they had sent notice to your client. Am I correct? Yes, Your Honor. So that not having sent that notice, the sentence was only 20 years instead of 30. That adds a maximum sentence. Correct, Your Honor. Do I understand that if you were to prevail here, that your client would not plead to the indictment? Well, Your Honor, he would not continue with this particular plea agreement. That does not foreclose his seeking another plea agreement with the government. All right. And, Judge Ambrose, did you have a question, sir? No, the point I was just saying is I understood also that it was said to him that there could be a supervised relief provision from five years to life. And, in fact, it was three years. Is that correct? That's correct. And also the amount of the fine was misstated. The district judge said two years. Instead, it was, in fact, pardon me, 2 million. In fact, it was 1 million. The other error that the district judge committed in this case, and it's confessed error, is that he did not conduct a review when Mr. Rosario presented his 2255 motion. The district judge did not himself do what Mabry and Kotok tell him he had to do, which is to determine for himself that it was a knowing and voluntary waiver. Instead, the district judge simply imported a presumption from an order entered by this Court, a summary order entered by this Court, during Mr. Rosario's directive. Which would be contrary to Mabry, right? It would, Your Honor. It would. And I think it's particularly important, and I'll take a quick detour, because the government makes much in its brief about this notion that there's already been a determination that it was a knowing and voluntary waiver. Not by the district court, right? Not by the district court and not by this Court either, Judge Shigaris. Well, not with respect to the collateral waiver, right? Exactly. Exactly. And, in fact, what happened, even on the direct appeal, was that there was a motion filed by the government to stay briefing and to enforce the waiver. There was no response from Mr. Rosario or counsel. And then there was an order from this Court, in fact, signed by Judge Ambrose, that dismissed the appeal because of the waiver. So there was no opportunity to raise the very issue that really is fatal to the plea colloquy. So that issue simply has not been decided. That's an error here. Now, do I understand that your client would have resisted had the district court in its very comprehensive and eloquent opinion? In fact, I can't remember seeing a district court opinion that was quite as thorough and complete as this one. Had the district court said to him, is this a voluntary statement on your part, Mr. Rosario, which involves also any collateral attack that may be made? Do I understand that he would have resisted that and said it was not voluntary? Judge Garth, are you asking me to address what he would have done at the point of the change of plea colloquy? Correct. Your Honor, I think the answer to that is that although you've extolled the virtues of the colloquy that Judge Gardner went through with my client, the fact is that it did include a mistake, and that's not in dispute. So Mr. Rosario, had he been asked at the time, is this knowing involuntary, would not have known that it was not knowing. So he would have said, sure, it's knowing involuntary, because he can't know what he doesn't know. He was misinformed. And his counsel didn't offer an objection to correct the record. So Mr. Rosario was left in that circumstance had the district judge told him that he faced a sentence of 80 years. He might have said, sure, this is knowing involuntary, because he would have no way of knowing otherwise. Now, let me sort of circle back, if I might, to the real issue here, I think. We all agree, I think, that the constitutional requirement of a knowing involuntary plea requires that an inmate, well, not an inmate yet, a defendant, know what he's giving up, know what he's getting, and know what risk he is avoiding. And that's critically important. But here this was misstated to Mr. Rosario, and it was significantly misstated, because he was told that he was subject to a maximum sentence of 30 years. And the plea agreement put him in a range that was roughly half of that. By the way, what were the issues that were brought up on the appeal for which we had the waiver of appeal? Your Honor, honestly, off the top of my head, I don't know. But why was this issue not brought up on the appeal? I guess it could only be brought up on habeas, or was that the perception? I believe that was the perception of Mr. Rosario, who was at that time on counsel, I believe. So the question then is, what was really the risk that Mr. Rosario was avoiding? What was the deal? And the deal instead was a range of approximately 15 years as opposed to 20. And that's a significant difference. The government says that this case is just like the Dixon case that Judge Fuentes wrote now about seven or eight years ago. But the truth is it's not. It's materially distinguishable. And those distinctions are one reason why it's actually helpful for Mr. Rosario if the court examines Dixon. Because Dixon was a case where, number one, Mr. Dixon would not say to the court, at oral argument or otherwise, that he would not have taken the plea had he known the real facts. Yeah, but that was sort of the key in Dixon. Yes. As to why the court said in that case they're not going to overturn the plea. I think that's right, Your Honor. And in addition to that, the court then sort of looked to the background and said, and there's no reason to think that he would have because this really was a good deal. In fact, if you read carefully what Judge Fuentes wrote, the deal for Mr. Dixon was, in essence, that he was getting a very short term when what he was exposed to was actually something in the neighborhood of 50 or 60 years had the government tacked on certain things. In fact, Judge Fuentes, in his opinion, said most importantly, or perhaps most importantly, he avoided those other charges. What was the actual sentence here? The actual sentence here was 10 years, Your Honor. It was 120 months. And so at the end of the day, it's a very different circumstance. So the point is, even if you were to win and go back on this, he runs a risk that he could end up with more than 10 years. Yes, he does. Okay. Yeah, and he's aware of that risk. But the issue is that he has certain things that he wants to bring before the court on habeas, and he wants the opportunity to do that. And we've identified certain problems with what happened in the district court here. And then I think the question is, should there be a remedy? And the further question, if there should be a remedy, what should it be? And we would submit, of course, that there does need to be a remedy. This was plain error. It affected Mr. Rosario's substantial rights. So what is the remedy? The remedy – Mr. Fyne, what would he bring before the district court, as you just said, that was different than was brought before the appellate court when we first sat on this and approved his sentence? What would he bring? Your Honor, when you say what would he bring? I'm curious to know if you were to prevail and we sent this back, what would happen? Well, Your Honor, I guess the question is in what form you sent it back. What we are asking – and I was about to say that the remedy that we would request from the court is that it's sent it back for an evidentiary hearing on that question of whether Mr. Rosario, in fact, would or would not have taken the plea because he says that he would not have. The government says that's incredible. Well, the word incredible includes credible, and that means a credibility determination. That would be for the district court. Judge Garth, if that – Wait a minute, Mr. Fyne. Are you telling me that all you want is an evidentiary hearing as to whether he would or would not take the plea? Yes, Your Honor. I mean, he has the choice of pleading voluntarily, giving up if the plea is accepted, giving up the right to attack collateral at 2255 proceeding, or going to trial. Now, that's not a difficult – it may be a difficult thing to decide, but that's not a difficult thing that requires an evidentiary hearing, is it? Do you want a plea or do you want to go to trial? Period. Judge Garth, that's not the issue that I think needs to be the subject of an evidentiary hearing, and perhaps I haven't been clear. The point is that Mr. Rosario has told this court that he would not have taken the plea. The government says we don't believe that. Look at it. It was a terrific deal, wonderful. We could ask this court simply to say credit what Mr. Rosario says, and if you do that, then the plea was not knowing involuntary, you undo it. What we're asking instead is actually something more modest than that, because we recognize that it's difficult to make a credibility determination on paper and that this court is loath to do so. The evidentiary hearing, Judge Garth, would not be to address the question of what does he want to do going forward. It would be to look back at August 8, 2005, the date of the plea colloquy, look at all the facts, let him testify, let him be – may I finish, Your Honor? Sure. Let him be before Judge Gartner and explain himself and then have a credibility determination made about whether, in fact, he would have chosen not to go to the plea agreement. Well, now, so is what you're asking for really what Mabry requires? In other words, you would say do what Mabry is – Judge Garth, I would ask that it go one step further. All right. Because Mabry, of course, says that you have to look into the case to make sure that it was knowing involuntary. Right. We would ask that the court direct that there be an evidentiary hearing because, of course, the district judge doesn't have to do that in every case under Mabry. But here we think that there are sufficient indicia in the record that Mr. Rosario would not, in fact, have taken the plea, that it rises to the level of something that calls for an evidentiary hearing. So perhaps we would call it Mabry plus. Well, isn't that something you'd ask the district court in the first instance? You'd like a regular hearing with testimony and all? Well, I think, you know, the government, Your Honor, says in its brief, you folks can decide this issue of knowing involuntary. You do it all the time. No need to send it back for that. And to a certain degree, we agree, but only to a point because we think that this court can agree that there's a colorable issue here about whether Mr. Rosario would have taken the plea. And therefore, this court could remand for fact-finding on the issue of whether, in fact, he would have. And that's why we request that remedy. Now, Mr. Fine, I don't understand that. If we just reverse and remand for further proceedings, the district court then is in the position of correcting what you state is error. It would inquire as to whether or not Mr. Rosario is willing to waive any attack, any collateral attack following the Goodson Trilogy, right? And isn't that all that's required so that the district court can either say it's not voluntary and take the step from there, or it is voluntary and back we go to a 20-year maximum and whatever you want to plead to? Isn't that what's involved? Well, Your Honor, I agree that it needs to go back to the district judge for ultimately that determination, but I think that the mechanism by which the determination should be made is an evidentiary hearing because this court now has before it enough information to conclude that there's a reason to make findings of fact. And the judge cannot on remand make those findings of fact simply on the record in front of him. At least he can't make them contrary to Mr. Rosario because he has now said in a pleading, he can swear out an affidavit or a declaration, he has now said he would not have taken the plea. If the government wants to contest that, that's fine, but there should then be an evidentiary hearing on the subject.  We'll hear from Mr. Salzburg. Thank you, Your Honor. Good morning, Your Honor. May it please the Court. Robert Salzburg on behalf of the government. Your Honor, this is one strange appeal because I don't know that anyone other than the members of this panel that I'm gleaning from the questions have really thought out the end game here of where we're heading. If Mr. Rosario is successful in withdrawing his plea, all that happens at that point is that the government is that things get seriously worse. And we're not here to do that. The government, I hope, on a regular basis, is not trying to get an extra pound of cash. But his point is he said he's willing to take that risk. I mean, you agree that there were new issues raised in his habeas that were not raised on appeal. Not quite, Your Honor, and I'm going to address that. He says he's willing to take that risk, but it's... The issue relating to whether he would have accepted or pled knowing that it could be 20 as opposed to 30 years, knowing that the supervised release provision was 3 years as opposed to 5 to life, that's a new issue. Plus, is there an ineffective assistance of counsel? Yes, that is definitely a new issue. The reason I talk about the outcome here, and I want to come back to this at the end of my argument, is I think it's relevant to plain error review. This court has the discretion whether to recognize plain error. And in doing that, I think you need to account for all the circumstances. But let me try to break it down one by one. The court is correct, through its issuances of a certificate of appealability, that there may have been an error in whether the district court followed Goodson and Maybrake in doing the analysis. The district court had to find two things, according to this court. One, that the plea, which includes the waiver, was knowing and voluntary. And two, that enforcement of the waiver would not cause a miscarriage of justice. Now, our position is that the district court did it right, as to the first part, the knowing and voluntary, which it turns out is all that's in dispute. And not as to the miscarriage of justice, but that's irrelevant, given that nobody seems to want to argue to this court the merit of any of the issues that Mr. Rosario wants to present, all of which are frivolous. So about the knowing and voluntary, what the district court said... So how did the court do it right with regard to knowing and voluntary at this actual plea colloquy? He thought he could get 30 years, right? Right. Here's why. The district court didn't ignore Maybrake. It recognized the standard, and it said the Third Circuit has ruled, and you cannot relitigate issues that have been settled by the court of appeals. With regard to the knowing and voluntary aspect, the district court was right. This court did rule on it. It had to rule on it in order to enforce the appellate waiver. And we're talking about the exact same waiver provision. That's the appellate waiver and the collateral review waiver. I have here, Your Honor, this is the pro se brief. Superficially, that's correct, but I don't recall when the appellate waiver came up with regard to the initial appeal, because I think I may have been the one that signed the order. I don't recall any claim being made that there was a misstatement with regard to what the sentence could be, and had I known that it was 20 as opposed to 30 years, I was really worried about that. I wouldn't have accepted. Your Honor, Your Honor is exactly right. Your recollection is exactly correct, and that's why I brought the brief. It was a pro se brief that was filed in number 06-2018. And Mr. Rosario, in this appeal, did argue that the plea was not knowing and voluntary for a number of reasons, including confusion during the hearing and ineffective assistance. And the one thing he didn't mention was any mistake with regard to the statutory maxima. And so what the district court is saying, and we believe it's correct, is you don't get two bites. You don't get to say to the court of appeals one set of issues and then come back and say, oh, I forgot. There's one other reason that my plea was not knowing and voluntary. So the district court's action here with regard to the knowing and voluntary standard was a very correct application of the rule we're all familiar with, which is you don't get to relitigate issues because you think of new arguments. That's all that's happening here. And Your Honors will see that when you look at the brief. Did he, what you're saying is he knew at the appeal level because he had a sentencing that it could be, it was 20 as opposed to 30 and he should have said something then? Is that what you're saying? Exactly. He absolutely knew it. And it's even more interesting than that because when you look at his brief in filing the waiver, even when he files his 2255. Was it stated at the sentencing hearing that the maximum could be 20 or basically did they just go through what the sentencing guidelines, well, I guess it would be a pre-sentence report. There was a pre-sentence report which said 20, which it was at that point. And I'm going to come back to that because of how 851 operates. But the last point about this on what was before the court of appeals, even when he filed his 2255, which was pro se, one, two, three years later, he didn't raise this as the reason to invalidate the plea. It never emerged with clarity as his new argument for invalidating the plea until my friend Mr. Fine filed his brief and stated it with clarity. This was not the position. Now, you could say that, well, maybe he acted foolishly in representing himself pro se, and that's often the case. But that was the choice that he decided to make. Well, I mean, at a minimum, shouldn't we send, I mean, consistent with Mabry and our other cases, don't we still have to send it back for analysis on miscarriage of justice? Well, it doesn't seem, yes, I would agree with that normally. But it doesn't seem. Maybe he throws all that in there. Maybe he tries to make those arguments in the context of that. Right. Well, two reasons for that. Not two, Your Honor. One is the defense is not pressing that here. That's what we pushed very hard in our brief. And they're coming back and saying, no, the government is just taking its eye off the issue. We're not arguing miscarriage of justice. And the reason they're not is articulated in our brief. We went through in our brief the 2255 issues one by one. And there isn't any cognizable merit to a single one of them. He's arguing speedy trial issues that don't exist. He's arguing misinformation about the career offenders provision. But isn't that for the district court in the first instance to pass on? Well, given that we're here on plain error review, we submit that this court can do that. This court is expert at it. It does it every day with regard to the enforcement of appellate waivers and looking at the issues. When it comes to habeas, I don't consider myself an expert at any time. Well, if you're not, Your Honor, then none of us are. I keep digging in. I've said this before, but Erwin Chemerinsky has said that habeas, I'm trying to understand habeas is like Dante's Inferno trying to go through the seven layers of hell. I appreciate that, Your Honor. Well, counsel, what about the ineffective assistance claim? I mean, how does that get dealt with? Well, I mean, we look at it. It's almost incomprehensible in the 2055 petition. I think the Court looks at it like it looks at any issue that's presented by an appellant in deciding whether there's a potential miscarriage of justice. I mean, you want us in the first instance to pass on an ineffective assistance claim? Oh, I think you could definitely do that. But I do have other arguments to present even before we get to that. I want to engage the case on the terms that the defense is presenting it, which is to say there's a dispute here over whether it's knowing and voluntary. My first argument is the district court was correct in relying on this Court's position on the exact same issue. My second argument is there isn't much of an error here with regard on what they want to present now, that it was not knowing and voluntary because he was misinformed as to the statutory maximum. This is not an ordinary case where, say, the maximum was 20 and the district court told him it's 50. As Judge Garth alluded to, the district court had very good reason to mention 30, and that is that that's what the maximum would have been if the government had filed an 851 petition based on the prior drug convictions that Mr. Rosario had. Now, Mr. Fine says, well, no, that's not an issue here because the government didn't file an 851 motion. That's up to them, whatever. As of the time of the plea, we had no reason to know that, and thus shouldn't have been told it's 30 years. But that's not true because the government, as we know from looking at Section 851, 851 requires that in order to enhance someone's sentence based on a prior drug conviction, we have to file a notice. And it explicitly says we have to file it before the entry of the plea of guilty or before the trial starts. In fact, Judge Sloboda wrote an opinion last month in the Isaac case lowering the sentence in one of our cases because the government did not timely file the 851 notice. So simply by the government appearing at the plea hearing, willing to take Mr. Rosario's plea based on this agreement, that was a statement which everyone was making, that no 851 notice was going to be filed. That moment was passing. And that's the reason it became a 20-year maximum. Mr. Fine says in his brief, I think the quote is Mr. Rosario was entitled to. That occurred how long after, that you would not file an 851, that occurred how long after the plea colloquy? Well, again, by appearing at the guilty plea hearing, the government is recognizing that it can no longer file an 851 notice. What we've advised the court for its own information is that of course there was conversation here between experienced counsel in negotiating the plea, that this was the reason for the plea, that the government was foregoing the 851 notice, which clearly applied here. And that happens in many, many cases. It's a common basis of negotiation. Mr. Fine says in his brief, page 15, quote, Mr. Rosario was entitled to know what was the maximum sentence he faced if he did not plead guilty. And he's right. That really is the reason for the Rule 11 colloquy. You need to know everything you're dealing with in making an informed decision about whether to plead guilty. Truth of the matter is, if Mr. Rosario walks out that door and does not enter the plea, then the parties are going to trial. And the government is going to file the 851 notice, and the maximum is 30 years. This is not Dixon. This is not the ordinary case of a simple mistake with regard to the maximum. It's an error in that once he enters the plea, he could be told, well, now it's 20. But in terms of, is he being told the worst consequence? Of course he is. Now, then, of course, there are more levels to it than that. Just the statement that, well, I would have gone to trial if it was 20 years, but not 30, that by itself is fairly incredible. We do have a statement here that makes this qualitatively different than Dixon. Dixon was quite equivocal as to whether he would accept or not accept the plea. Here he's saying, Mr. Rosario, that he would not have entered into the plea agreement had he known the correct maximum sentence. Now, we all admit that if that's what he really wants and he gets that, he's taking a heck of a risk. Well, we do have that statement, but here's what's so fascinating about this, which is that if he decides that he doesn't want to plead, then the maximum really is going to be 30 years. The government is going to file an 851 notice. That's the risk he's taking now. Judge Garth kept asking, what do you want from this? Well, if he's saying that the plea was not voluntary, then the only remedy the court can give him, the district court, is to let him withdraw his plea. He withdraws his plea. We file the 851 notice. He goes to trial. The 851 notice not only raises the statutory maximum, but because of the way the career offender provision works, his guidelines skyrocket. He goes from a 12-year bottom on his guidelines to a 22-year bottom. There's just a tremendous difference. And that's why, you know, I question whether, you know, how much this has even been thought out by the defendant. But is there a miscarriage of justice here? I mean, of course not. And this gets me to the point I want to make about the plea. You say, you know, you've said we can decide that in the first instance. I assume what your argument is is you'd like us to, but it's up to our discretion whether we want to or whether we send it back, right? Oh, I certainly agree with that, Your Honor, absolutely. And that's my last point that I want to make, which is about the plain error standard. And I want to talk about the fourth prong, which I don't know that I've ever done in an appellate argument. But the fourth prong, of course, recognizes the court's discretion not to recognize even plain error and to say that the error does not affect the fairness and integrity of the judicial system. Dixon went there. Dixon looked at the circumstances and essentially said, give us a break. You were told it was 40 years. It was really only 10. But you had this fantastic deal. You got a six-year sentence. They didn't bring more charges against you. This case, in that light, is exactly the same. He got an incredible deal. He not only got down to a 12-year guideline, but then the court, because he had put himself on the mercy of the court, gave him a further variance below that and gave him 10 years. And so what – and, of course, the government refrained from filing the 851 notice. And so what does this court accomplish in terms of the fairness and integrity of the judicial system by recognizing this error and sending him back to the wolves? There are only two things that would help Mr. Rosario in this case. You're not saying you're a wolf, are you? No. Maybe collectively. It's not the appellate – No, I'm not. Of course.  out of the defendant. As I was saying, there are two things that would help Mr. Rosario, and neither is possible or referenced anywhere. One is if he could get rid of the indictment, if the charge went away. His only argument for that is the speedy trial, which is squarely rejected by the Watkins decision. He has no basis for that. And he has no other argument anywhere, not in his direct appeal, not in 2255, to get rid of the case. His own defense counsel said correctly there were no defenses in this case. He sold drugs three times to undercover officers. They went in his house and they found the additional stash of cocaine. This is a case that can be tried at any time. There are only officer witnesses. So he's not getting rid of the case. The only other thing that would help him, and I think this is what he really wants, he alludes to in the 2255, is to get rid of his career offender designation. That would tremendously reduce his guideline range below the sentence he received. But he has no argument on that either. He was convicted three times of felony drug offenses before this incident took place. So is this an instance that calls into question the fairness and integrity of the judicial system? I don't think so. I mean, not by a long shot. I think that he got, as Judge Garth referred, probably the most extensive colloquy I've ever seen, and obviously entered a knowing plea. His lawyer said that was his intention from the first minute. And why we're here is really somewhat perplexing. The last thing about the collateral review waiver, my argument that it's the same as the appellate waiver, just to answer a question, the court, Judge Gardner did explicitly refer to the collateral review waiver on page 92 of the appendix, as well as the appellate waiver. I can tell this court, as you know, that I personally review and sign off on dozens of appellate waiver motions every year and look at the colloquies and occasionally decide that we cannot proceed because of an inadequate colloquy. I have never seen a colloquy as extensive as this. I wish I could add it to the district judge's bench book because it would save us a lot of trouble in some cases. Thank you. Thank you. As you're coming up, Mr. Fine, one thing I would ask is that you confer with Mr. Zosmer and the clerk's office and have a transcript ordered of this oral argument. I would ask that Mr. Zosmer, would the government be willing to pick up the cost of the transcript? We will. We'll take care of it. Okay. Very good. Thank you. Thank you, Your Honor. Thank you, Mr. Zosmer. Your Honors, there are just a couple of points that I'd like to pick up in rebuttal. The first is back to this question of whether the order that Judge Ambrose signed in the direct appeal somehow could be piggybacked in the collateral review context by Judge Gardner. And the answer is it simply cannot. There is no indication that anything before this court would have informed it that this was an issue. The brief that Mr. Zosmer had in his hand there was essentially a merits brief by a pro se inmate who filed it before the government filed the motion to enforce the waiver. The government filed the motion to enforce the waiver. The next things on the docket sheet, which I have right here, the next things are simply an order from the clerk's office referring it to a motions panel. And then the next thing is the motions panel signing off on the waiver. There is no indication that this court actually made any kind of a determination on the question of whether it was a knowing and voluntary plea because it simply didn't have the information in front of it. So that argument simply cannot. What information, Mr. Fine? What information did the court not have before when it read the materials that it had in the appendix that came before it, read the plea colloquy, read the sentencing colloquy, what information was missing? Your Honor, the question presumes something that respectfully I don't think is correct. That there was a full appendix before the court in the direct appeal. This was a pro se inmate. Okay, strike the appendix. Strike the appendix. What information was missing after reading Judge Gardner's colloquy both in the plea negotiations, the plea and the sentencing? What was missing? That's what I want to know because I can't quite figure out where Mr. Rosario is going. Your Honor, I understand the ultimate question that you raised, but let me make two responses to the question that you posed. The first is, and again, respectfully, Your Honor, I think that your question presupposes something that's not so, which was that the court, this court on the direct appeal, had before it any of those transcripts. There's no evidence that it did. The second thing is that what it did not have before it is- Wait a minute. Wait a minute. What do you mean that there is no evidence that it did? It had to determine at the time that it affirmed the appeal, did it not have to determine the very issues that we're here today for? No, Your Honor. I admit that the Judge Gardner did not refer to the 2255 waiver. But other than that, didn't our court have to decide whether or not what Mr. Rosario's answers to the court were voluntary and willing? No, Your Honor. That's not because if I could explain, Your Honor, the simple answer is that we're presuming full briefing and a full appendix. This was a motion, a summary motion, to enforce a waiver of direct appeal rights, which, as you know, those sorts of motions are brought before the court all the time. What the court had before it were the motion papers filed by the government, which did not identify the problem. It did not have the full appendix before it that would have included those transcripts. So there is absolutely no reason to believe that this court would have had any reason to know that there was this issue. And if I might just make one other very brief statement, Your Honor, I realize I'm on your time, as Judge Becker would have said. No problem. That means that you have no problem. Just go until we stop you. I appreciate it, Your Honor. The problem here at its root in the colloquy, which we keep referring to as sort of the paradigm of what plea colloquies ought to be, with all due respect to Judge Gardner, a very precise, very lengthy, very detailed plea colloquy is wonderful. But if it includes a mistake, a material mistake of information. I understand that, Mr. Fine. I understand that. What I don't understand is when you shortchange the Third Circuit court in feeling that when a motion comes before it of the character of the one that did, in which it held that his waiver was willing and voluntary, that the members of that court would not have taken it upon themselves to read what had gone on before, not to just make a naked judgment. I know that if I had been on that court, and I think any one of my colleagues, they would have looked behind what it was that was supposed to be willing and voluntary and would have made their determination on that score. We don't make decisions in a vacuum. Your Honor, I understand that, and please rest assured that the last thing I would do in this lifetime is to shortchange the Third Circuit. The problem here is that there is simply no indication that the court had that information in front of it. Courts act on what is presented to them. They review what's presented to them. They give consideration to it. But if somebody doesn't tell it to you, and you don't have the opportunity to know it, then you wouldn't know. I mean, one presumes that Judge Ambrose, who signed the order, might know whether in fact it was. The way it's done throughout, what you have is a motion. You have a, well, in this case it would be the government, would the government file a motion for summary affirmance? Yes, Your Honor. And oftentimes what you have is a staff attorney's memorandum. If you do not have a staff attorney's memorandum, then you usually have a memorandum of a clerk in your court. But here the point is at that time I don't believe that we knew that there was a claim made that the sentencing colloquy and the plea entailed a possibility of a 20 as opposed to a 30-year maximum. And so, Judge Garth, that's the reason that I made the statement I made, because if the court doesn't know that the issue is there, the court cannot resolve it. And I don't think that shortchanges the court of wit to say that. Mr. Rosario didn't have the opportunity to tell the court the problem. So in the final analysis what we would ask of this court is to vacate the dismissal of the 2255 petition, or motion rather, and remand the case for an evidentiary hearing on the question of whether it was a knowing involuntary waiver given the error in the plea colloquy. Thank you, Mr. Fein. Did you have this case pro bono? Yes, Your Honor. You and Mr. Zosmer, as usual, are excellent. It's a privilege to have you before us. Thank you for very well-presented arguments, and we'll take the matter under advisement. Thank you, Your Honor. And, Judge Garth, thank you. And, Judge Shigaris, you as well.